STEVEN E. GUINN
Nevada Bar No. 5341
MICHAEL W. LARGE
Nevada Bar No. 10119
LAXALT & NOMURA
9600 Gateway Drive
Reno, NV 89521
Telephone: 775.322.1170
Facsimile: 775.322.1865

*Of Counsel:*

Howard N. Cayne (*Pro Hac Vice Pending*)
David B. Bergman (*Pro Hac Vice Pending*)
David D. Fauvre (*Pro Hac Vice Pending*)
ARNOLD AND PORTER, LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: 202.942.5000
Facsimile: 202.942.5999

Stephen E. Hart (*Pro Hac Vice Pending*)
FEDERAL HOUSING FINANCE AGENCY
1700 G St., NW
Washington, DC 20552
Telephone: 202.414.3800

Attorneys for the Federal Housing Finance Agency as
Conservator of Fannie Mae and Freddie Mac

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LACY J. DALTON, *et al.*,

               Plaintiffs,

vs.

CITIMORTGAGE, INC., *et al.*,

               Defendants.

Case No.: 3:09-cv-534 (RCJ)

## MOTION OF INTERVENOR FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FANNIE MAE AND FREDDIE MAC FOR LEAVE TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES THERETO

Intervenor Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator

for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan

1  Mortgage Corporation ("Freddie Mac"), by and through undersigned counsel, hereby submits

2  this Motion for Leave to File Opposition to Plaintiffs' Motion for Preliminary Injunction and

3  Memorandum of Points and Authorities Thereto.

4  DATED: September 30, 2009                    Respectfully submitted,

5  *Of Counsel:*

6  Stephen E. Hart (*Pro Hac Vice Pending*)
   FEDERAL HOUSING FINANCE AGENCY              STEVEN E. GUINN
7  1700 G St., NW                              Nevada Bar No. 5341
   Washington, DC 20552                        MICHAEL W. LARGE
8  T: 202-414-3800                             Nevada Bar No. 10119
                                               LAXALT & NOMURA
9                                              9600 Gateway Drive
   Howard N. Cayne (*Pro Hac Vice Pending*)*   Reno, NV 89521
10 David B. Bergman (*Pro Hac Vice Pending*)   Telephone: 775.322.1170
   David D. Fauvre (*Pro Hac Vice Pending*)    Facsimile: 775.322.1865
11 ARNOLD AND PORTER, LLP
12 555 Twelfth Street, NW                      ***Attorneys for the Federal Housing Finance***
   Washington, DC 20004-1206                   ***Agency as Conservator of Fannie Mae and***
13 Telephone: 202.942.5000                     ***Freddie Mac***
   Facsimile: 202.942.5999
14

15              **MEMORANDUM OF POINTS AND AUTHORITIES**

16         Intervenor Federal Housing Finance Agency ("FHFA" or "Conservator" or "Agency"), as

17 Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal

18 Home Loan Mortgage Corporation ("Freddie Mac") (together, the "Enterprises"), hereby seeks

19 leave to file its Opposition to Plaintiffs' Motion for Preliminary Injunction.

20         On September 16, 2009, Plaintiffs filed their Motion for Temporary Restraining Order

21 and Preliminary Injunction (Docket No. 6). In their Motion, Plaintiffs seek to enjoin all

22 Defendants and "their agents, employees, attorneys, and anyone acting on their behalf" from

23 foreclosing on assets or initiating any foreclosure proceedings. On September 23, 2009, this

24 Court denied Plaintiffs' Motion to the extent it sought emergency relief, and set a deadline of

25 September 30, 2009 for Defendants to file oppositions to Plaintiffs' request for preliminary

26 relief.

27         On September 30, 2009, concurrent with the present Motion for Leave, FHFA, as

28 Conservator of Fannie Mae and Freddie Mac, moved this Court to allow it to intervene in this

                                    -2-

1    action. FHFA seeks to intervene for the purpose of opposing Plaintiffs' motion because the

2    relief sought by Plaintiffs would contravene the principle established by statute that courts not

3    restrain and affect the exercise of FHFA's powers and authorities as Conservator of Fannie Mae

4    and Freddie Mac in violation of 12 U.S.C. § 4617(f).

5          Because this Court has not yet granted the FHFA's Motion to Intervene, the FHFA seeks

6    leave to file its opposition to plaintiffs' motion for preliminary injunction. Attached to this

7    motion is a proposed order granting the FHFA's motion for leave to file its opposition, as well as

8    the Opposition of Intervenor Federal Housing Finance Agency as Conservator for Fannie Mae

9    and Freddie Mac to Plaintiffs' Motion for Temporary Restraining Order and Preliminary

10   Injunction and Memorandum of Points and Authorities Thereto.

11   DATED:  September 30, 2009             Respectfully submitted,

12   *Of Counsel:*

13   Stephen E. Hart *(Pro Hac Vice Pending)*

14   FEDERAL HOUSING FINANCE AGENCY
     1700 G St., NW
15   Washington, DC 20552
     T: 202-414-3800

16

17   Howard N. Cayne *(Pro Hac Vice Pending)**
     David B. Bergman *(Pro Hac Vice Pending)*
18   David D. Fauvre *(Pro Hac Vice Pending)*
     ARNOLD AND PORTER, LLP
19   555 Twelfth Street, NW
     Washington, DC  20004-1206
20   Telephone: 202.942.5000
     Facsimile: 202.942.5999
21

STEVEN E. GUINN
Nevada Bar No. 5341
MICHAEL W. LARGE
Nevada Bar No. 10119
LAXALT & NOMURA
9600 Gateway Drive
Reno, NV 89521
Telephone: 775.322.1170
Facsimile: 775.322.1865

***Attorneys for the Federal Housing Finance Agency as Conservator of Fannie Mae and Freddie Mac***

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I certify that I am an employee of Laxalt & Nomura and not a party to, nor interested in, the within action; that on the 30th day of September, 2009, a true and correct copy of the foregoing ***MOTION OF INTERVENOR FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FANNIE MAE AND FREDDIE MAC FOR LEAVE TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES THERETO;  PROPOSED ORDER GRANTING MOTION FOR LEAVE TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION*** was transmitted electronically through the Court's CM/ECF electronic notice system*, to the attorneys associated with this case.

Dated:  September 30, 2009

Yvonne Larssen, An Employee of Laxalt & Nomura, Ltd

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LACY J. DALTON, *et al.*,

          Plaintiffs,

vs.

CITIMORTGAGE, INC., *et al.*,

          Defendants.

Case No.: 3:09-cv-534 (RCJ)

## [PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Court, having reviewed the Motion of the Federal Housing Finance Agency as Conservator for Fannie Mae and Freddie Mac For Leave to File Opposition to Plaintiffs' Motion for Preliminary Injunction, hereby ORDERS that such request is GRANTED.

**IT IS HEREBY ORDERED.**

Dated: _____, 2009

                                  _____
                                    Hon. Robert C. Jones
                                    United States District Court Judge

1 | STEVEN E. GUINN
Nevada Bar No. 5341
2 | MICHAEL W. LARGE
Nevada Bar No. 10119
3 | LAXALT & NOMURA
9600 Gateway Drive
4 | Reno, NV 89521
Telephone: 775.322.1170
5 | Facsimile: 775.322.1865

6 | Howard N. Cayne (*Pro Hac Vice Pending*)
David B. Bergman (*Pro Hac Vice Pending*)
7 | David D. Fauvre (*Pro Hac Vice Pending*)
ARNOLD AND PORTER, LLP
8 | 555 Twelfth Street, NW
Washington, DC 20004-1206
9 | Telephone: 202.942.5000
Facsimile: 202.942.5999

10

Stephen E. Hart (*Pro Hac Vice Pending*)
11 | FEDERAL HOUSING FINANCE AGENCY
1700 G St., NW
12 | Washington, DC 20552
Telephone: 202.414.3800

13

Attorneys for the Federal Housing Finance Agency as
14 | Conservator of Fannie Mae and Freddie Mac

15

16 | **UNITED STATES DISTRICT COURT**

17 | **DISTRICT OF NEVADA**

18

19 | LACY J. DALTON, *et al.*,                    Case No.: 3:09-cv-534 (RCJ)

20 |                     Plaintiffs,              **OPPOSITION OF INTERVENOR**
**FEDERAL HOUSING FINANCE**
21 |           vs.                               **AGENCY AS CONSERVATOR FOR**
**FANNIE MAE AND FREDDIE MAC TO**
22 | CITIMORTGAGE, INC., *et al.*,                **PLAINTIFFS' MOTION FOR**
**TEMPORARY RESTRAINING ORDER**
23 |                     Defendants.             **AND PRELIMINARY INJUNCTION AND**
**MEMORANDUM OF POINTS AND**
24 |                                             **AUTHORITIES THERETO**

25 |           Intervenor Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator

26 | for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan

27 | Mortgage Corporation ("Freddie Mac"), by and through undersigned counsel, hereby submits

28

1  this Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary

2  Injunction (Docket No. 6) (the "Motion").

3  ///

4  ///

5  ///

6  ///

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................................... 1

FACTUAL AND STATUTORY BACKGROUND.............................................................. 2

      A.  Fannie Mae and Freddie Mac .......................................................................... 2

      B.  The Federal Housing Finance Agency ............................................................. 2

      C.  The Appointment of FHFA as Conservator of Fannie Mae and Freddie Mac ..... 3

      D.  The Relief Plaintiffs Seek.................................................................................. 5

ARGUMENT ......................................................................................................... 6

I.  PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE
    MERITS OR THAT THEY ARE LIKELY TO SUFFER IRREPARABLE
    HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.................................. 6

II. THE REQUESTED INJUNCTION IS CONTRARY TO THE PUBLIC
    INTEREST; THE BALANCE OF THE EQUITIES FAVORS DENIAL OF
    PLAINTIFFS' MOTION......................................................................................... 7

CONCLUSION...................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*281-300 Joint Venture v. Onion,*
938 F.2d 35 (5th Cir. 1991)................................................................................. 9, 11

*Able v. United States,*
44 F.3d 128 (2d Cir. 1995)....................................................................................... 6

*Costa v. Resolution Trust Corp.,*
789 F. Supp. 43 (D. Mass. 1991) ........................................................................... 10

*Esther Sadowsky Testamentary Trust v. Syron,*
No. 08-cv-5221 (BSJ), 2009 WL 1309776 (S.D.N.Y. May 6, 2009) ....................... 8

*Furgatch v. Resolution Trust Corp.,*
No. 93-20304, 1993 WL 149084 (N.D.Cal. Apr. 30, 1993) ................................... 10

*Gross v. Bell Savings Bank PA SA,*
974 F.2d 403 (3d Cir. 1992)................................................................................... 10

*In re Fed. Home Loan Mortgage Corp. Derivative Litig.,*
No. 1:08-cv-773 (LMB/TCB), 2009 WL 2421447 (E.D. Va. July 27, 2009)....................... 8, 9

*In re Fed. Nat'l Mortgage Ass'n. Sec., Derivative, and "ERISA" Litig.,*
629 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................ 8, 9

*In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.,*
340 F.3d 749 (8th Cir. 2003)................................................................................... 8

*Johnson v. Sherman,*
No. S-04-2255 LKK EFB P, 2007 WL 1029856 (E.D. Cal. Apr. 2, 2007) .............. 6

*Lloyd v. FDIC,*
22 F.3d 335 (1st Cir. 1994) .................................................................................... 9

*Nat'l Trust for Historic Pres. v. FDIC,*
995 F.2d 238 (D.C. Cir. 1993) ............................................................................. 11

*Nat'l Trust for Historic Pres. v. FDIC,*
21 F.3d 469 (D.C. Cir. 1994) ............................................................................... 11

*Pareto v. FDIC,*
139 F.3d 696 (9th Cir. 1998).................................................................................. 8

*Ramos v. NDEX West, LLC,*
No. 1:09-cv-00190, 2009 WL 1675911 (E.D. Cal. June 1, 2009) .......................... 10

*Sahni v. Am. Diversified Partners,*
    83 F.3d 1054 (9th Cir. 1996)...................................................................... 9

*Sharpe v. F.D.I.C.,*
    126 F.3d 1147 (9th Cir. 1997)................................................................... 11

*Stormans, Inc. v. Selecky,*
    571 F.3d 960 (9th Cir. 2009).................................................................... 6

*Sunshine Dev., Inc. v. FDIC,*
    33 F.3d 106 (1st Cir. 1994) ..................................................................... 9

*Tillman v. Resolution Trust Corp.,*
    37 F.3d 1032 (4th Cir. 1994)................................................................... 10

*United States v. Oakland Cannabis Buyers' Co-op.,*
    532 U.S. 483 (2001) ............................................................................... 8

*Volges v. Resolution Trust Corp.,*
    32 F.3d 50 (2d Cir. 1994)................................................................... 9, 10

*Ward v. Resolution Trust Corp.,*
    996 F.2d 99 (5th Cir. 1993).............................................................. 10, 11

*Winter v. Natural Res. Def. Council, Inc.,*
    --- U.S. ----, 129 S.Ct. 365 (2008)........................................................... 6

**STATUTES**

12 U.S.C. § 1452 ...................................................................................... 2

12 U.S.C. § 1723 ...................................................................................... 2

12 U.S.C. § 1822(d) ............................................................................... 10

12 U.S.C. § 4501(6) .................................................................................. 3

12 U.S.C. § 4617(a).................................................................................. 3

12 U.S.C. § 4617(a)(2) .............................................................................. 3

12 U.S.C. § 4617(b)(2)(A)(i) ...................................................................... 4

12 U.S.C. § 4617(b)(2)(B)(i)..................................................................... 4, 5

12 U.S.C. § 4617(b)(2)(D) ......................................................................... 1

12 U.S.C. § 4617(f) ......................................................................... 1, 5, 7, 8

Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654
    (codified at 12 U.S.C. § 4501 *et seq.*) ................................................. 1, 2

**OTHER AUTHORITIES**

*Fact Sheet: Questions & Answers on Conservatorship* (Sept. 7, 2008), *available at* http://www.fhfa.gov/webfiles/35/FHFACONSERVQA.pdf (last visited Aug. 20, 2009)...................................................................................................................................... 3

Fed. Nat'l Mortgage Ass'n, Current Report (Form 8-K), at 4 (Sept. 11, 2008) ............................ 3

Statement by Fed. Reserve Bd. Chairman Ben Bernanke (Sept. 7, 2008), *available at* http://www.federalreserve.gov/newsevents/press/other/20080907a.htm (last visited Aug. 20, 2009)...................................................................................................................... 3

Statement by Sec'y Henry M. Paulson, Jr. on Treasury and Federal Housing Finance Agency Action to Protect Financial Markets and Taxpayers (Sept. 7, 2008), *available at* http://www.treas.gov/press/releases/hp1129.htm (last visited Aug. 20, 2009)..................... 3

Statement of FHFA Dir. James B. Lockhart 5-6 (Sept. 7, 2008), *available at* http://www.fhfa.gov/webfiles/23/FHFAStatement9708final.pdf. ........................................... 3

Statement of The Honorable James B. Lockhart III, Dir., Fed. Housing Fin. Agency, Before the Senate Committee on Banking, Housing, and Urban Affairs on the Appointment of FHFA as Conservator for Fannie Mae and Freddie Mac, 5 (Sept. 23, 2008) available at: http://banking.senate.gov/public/_files/LOCKHARTStmt92308.pdf......................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

As Conservator of Fannie Mae and Freddie Mac (the "Enterprises"), FHFA is afforded broad powers by federal statute to operate the Enterprises and to "preserve and conserve" the assets thereof in order to put the Enterprises in "sound and solvent condition." 12 U.S.C. § 4617(b)(2)(D). The Conservator possesses "all the rights, titles, powers, and privileges" with respect to the Enterprises and their assets. *Id.* § 4617(b)(2)(A)(i). Those powers pursuant to statute also include the ability to operate free from judicial interference in the exercise of the powers and functions of the conservator. *Id.* § 4617(f). "[N]o court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator . . . ." *Id.*

The ability of the Enterprises to foreclose on loans in default is a central function and power necessary for the Conservator to "conserve and preserve" the assets of the Enterprises. Because MERS is listed as the beneficiary on the deed of trust for many single family mortgages owned by Fannie Mae and Freddie Mac, granting the broad relief sought by Plaintiffs in their Complaint — to declare unenforceable and to enjoin foreclosures of loans in which MERS is listed as the beneficiary — would undoubtedly restrain or affect the exercise of the powers and functions of the Conservator in contravention of the 12 U.S.C. § 4617(f).

This Court should deny the relief sought in Plaintiffs Motion because Plaintiffs fail to meet the standard for issuance of a preliminary injunction. As a threshold matter, Plaintiffs cannot show that they are likely to prevail on the merits because, as stated in the other briefs of the defendants, foreclosures of MERS loans are appropriate and lawful. Further, the public interest overwhelmingly favors denial of the preliminary injunction. The relief that Plaintiffs seek – effectively barring the Enterprises from foreclosing on assets in default – necessarily will interfere with the Conservator's statutory duty to preserve and conserve the assets of the Enterprises, and will cause significant expense to the Enterprises under the Conservator's control. Congress addressed the public interest at issue here in the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. § 4501 *et*

1    *seq.*) ("HERA"), making clear that the public interest is best served by permitting FHFA to

2    operate free from court interference in the exercise of its statutory duties and powers.  Because

3    the relief sought by Plaintiffs would directly contravene the principle set forth in HERA,

4    consideration of the public interest overwhelmingly weighs in favor of denying the relief

5    Plaintiffs seek.  The Court should be particularly cautious in its consideration of Plaintiffs'

6    request in light of the principles set forth in federal statute granting the Conservator broad

7    discretion to exercise its powers and functions, including the right to foreclose on assets under its

8    control.  Accordingly, the relief requested by Plaintiffs should be denied.

9                       **FACTUAL AND STATUTORY BACKGROUND**

10           **A.    Fannie Mae and Freddie Mac**

11           Fannie Mae and Freddie Mac are publically traded corporations chartered by Congress.

12    *See* 12 U.S.C. § 1723 (Fannie Mae); 12 U.S.C. § 1452 (Freddie Mac).  The activities of Fannie

13    Mae and Freddie Mac are confined to the secondary mortgage market.  The Enterprises buy

14    mortgages from commercial banks, thrift institutions, mortgage banks, and other primary

15    lenders, and either hold these mortgages in their own portfolios, or package them into mortgage-

16    backed securities for resale to investors, thereby creating a ready supply of mortgage funds for

17    American homebuyers.  These funds are fundamental to both the availability of residential

18    mortgage credit and the stability of the housing finance system.

19           **B.    The Federal Housing Finance Agency**

20           On July 30, 2008, Congress passed the Housing and Economic Recovery Act of 2008, 12

21    U.S.C. § 4501 *et seq.*, thereby creating the Federal Housing Finance Agency as an independent

22    federal agency.  Pursuant to HERA, FHFA succeeded to the authorities previously granted to

23    both the Office of Federal Housing Enterprise Oversight ("OFHEO") and the Federal Housing

24    Finance Board ("FHFB"), and the Agency now serves as the sole regulatory and oversight

25    authority for Fannie Mae, Freddie Mac, and the Federal Home Loan Bank System.  *Id.*  Among

26    its "principal duties," FHFA is charged with examining the financial safety and soundness and

27    overall risk management practices of Fannie Mae and Freddie Mac "to ensure that each

28

1  [Enterprise] operates in a safe and sound manner, including maintenance of adequate capital and

2  internal controls." *Id.* § 4513(a)(1)(B)(i).

3       In establishing FHFA, Congress found that the Agency "regulating [Fannie Mae and

4  Freddie Mac] should have the authority to . . . prescribe adequate standards for books and

5  records and other internal controls . . . and enforce compliance with the standards and rules that it

6  establishes." 12 U.S.C. § 4501(6). As a result, Congress granted the Director, in the first

7  instance, all of the powers previously held by FHFB and OFHEO, including the right to issue

8  "regulations, guidelines, [and] orders," *id.* § 4526(a), and the power to ensure that "each

9  [Enterprise] complies" with FHFA's regulatory authority, *id.* § 4513(a)(1)(B)(iii).

10       In addition, and most pertinent here, Congress granted the Director of FHFA the

11  authority to place the Enterprises into conservatorship or receivership "for the purpose of

12  reorganizing, rehabilitating, or winding up the affairs of [the Enterprises]." *See* 12 U.S.C.

13  § 4617(a)(2).

14      **C.**    **The Appointment of FHFA as Conservator of Fannie Mae and Freddie Mac**

15       On September 6, 2008, pursuant to the authority granted under HERA, and after

16  determining that the Enterprises could not "continue to operate safely and soundly and fulfill

17  their critical public mission,"[1] the Director placed Fannie Mae and Freddie Mac under the

18  conservatorship of FHFA.[2] *See* 12 U.S.C. § 4617(a). "The goals of the conservatorship[s] are to

19  help restore confidence in the [Enterprises], enhance [their] capacity to fulfill [their] mission[s],

20  and mitigate the systemic risk that has contributed directly to the instability in the current

21

22  [1] Statement of FHFA Dir. James B. Lockhart 5-6 (Sept. 7, 2008), *available at*

23  http://www.fhfa.gov/webfiles/23/FHFAStatement9708final.pdf.

24  [2] The Director's actions were widely supported by other senior U.S. officials, including the
Treasury Secretary and the Chairman of the Federal Reserve Board, both of whom stated

25  publicly that placing Fannie Mae and Freddie Mac into FHFA Conservatorships was an action
necessary to promote stability in the U.S. housing and financial markets. *See* Statement by Sec'y

26  Henry M. Paulson, Jr. on Treasury and Federal Housing Finance Agency Action to Protect
Financial Markets and Taxpayers (Sept. 7, 2008), *available at*

27  http://www.treas.gov/press/releases/hp1129.htm (last visited Aug. 20, 2009); Statement by Fed.
Reserve Bd. Chairman Ben Bernanke (Sept. 7, 2008), *available at*

28  http://www.federalreserve.gov/newsevents/press/other/20080907a.htm (last visited Aug. 20,
2009).

market."[3]  In a statement to the Banking Committee on September 16, 2008, Director James

Lockhart III stated that FHFA based its determination to appoint a conservator for Fannie Mae

and Freddie Mac on, among other things, "[t]he critical importance of each company in

supporting the country's residential mortgage market."[4]

In its capacity as Conservator, FHFA is vested with broad statutory powers to act *on

behalf of and through* the Enterprises.  Pursuant to 12 U.S.C. § 4617(b)(2)(A)(i), upon its

appointment as Conservator, FHFA "immediately succeed[ed]" to "all rights, titles, powers, and

privileges of [the Enterprises], and of any stockholder, officer, or director of [the

Enterprises] . . . ."  In addition, pursuant to 12 U.S.C. § 4617(b)(2)(B)(i), FHFA is empowered as

Conservator to:

> take over the assets of and operate [the Enterprises] with all the powers of
> the shareholders, the directors, and the officers of the [the Enterprises] and
> conduct all business of [the Enterprises].

FHFA is entitled to exercise these powers "to preserve and conserve the assets and property of

[the Enterprises]," *id.* at § 4617(b)(2)(iv), and may "provide by contract for assistance in

fulfilling any function[s], activit[ies], action[s], or dut[ies]" as Conservator. *Id.* § 4617(b)(2)(v).

Furthermore, FHFA is statutorily empowered to:

- "collect all obligations and money due the regulated entity," *id.*
  § 4617(b)(2)(B)(ii),

- "perform all functions of the regulated entity," *id.* § 4617(b)(2)(B)(iii),

- "take any such action as may be [] necessary to put the regulated entity in
  a sound and solvent condition; and [] appropriate to carry on the business
  of the regulated entity and preserve and conserve the assets and property
  of the regulated entity," *id.* § 4617(b)(2)(D)(i)-(ii),

- "transfer or sell any asset or liability of the regulated entity in default, and
  may do so without any approval, assignment, or consent with respect to
  such transfer or sale," *id.* § 4617(b)(2)(G),

---

[3] *Fact Sheet: Questions & Answers on Conservatorship* (Sept. 7, 2008), *available at*
http://www.fhfa.gov/webfiles/35/FHFACONSERVQA.pdf (last visited Aug. 20, 2009); *see also*
Fed. Nat'l Mortgage Ass'n, Current Report (Form 8-K), at 4 (Sept. 11, 2008).

[4] *See* Statement of The Honorable James B. Lockhart III, Dir., Fed. Housing Fin. Agency, Before
the Senate Committee on Banking, Housing, and Urban Affairs on the Appointment of FHFA as
Conservator for Fannie Mae and Freddie Mac, 5 (Sept. 23, 2008) available at:
http://banking.senate.gov/public/_files/LOCKHARTStmt92308.pdf.

1    • "exercise all powers and authorities specifically granted to
conservators . . . and such incidental powers as shall be necessary to carry

2    out such powers," *id.* § 4617(b)(2)(J)(i), and

3    • "take any action authorized by this section, which the Agency determines
is in the best interests of the regulated entity or the Agency."

4    *Id.* § 4617(b)(2)(J)(ii).

5    To provide the Conservator with the broadest possible latitude to operate the Enterprises

6    and preserve and conserve their assets without interference, Congress expressly precluded

7    judicial review of the Conservator's statutorily authorized activities: "*[N]o court may take any*

8    *action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator.*" *Id.*

9    § 4617(f) (emphasis added).

10    **D.    The Relief Plaintiffs Seek**

11    In their motion for a preliminary injunction, Plaintiffs ask this Court to enjoin initiated or

12    purportedly imminent foreclosure proceedings and to reverse foreclosure sales that have already

13    occurred. Plaintiffs request even broader relief in their Complaint, seeking to declare

14    unenforceable and enjoin all foreclosures – nationwide – on deeds of trust in which MERS is

15    listed as the beneficiary. *See* Compl. ¶ 228. The relief sought in this matter is substantially

16    similar to the relief sought in several other cases brought by the same counsel in this and other

17    courts. *See Cervantes v. Countrywide Home Loans, Inc.*, No. 09-cv-517 (D. Ariz. filed March

18    13, 2009);[5] *Vargas v. Countrywide Home Loans, Inc.*, No. 09-cv-2309 (C.D. Cal. filed Apr. 2,

19    2009); *Lopez v. Executive Trustee Serv. LLC*, No. 09-cv-180 (D. Nev. filed Apr. 8, 2009);

20    *Robinson v. GE Money Bank*, No. 09-cv-227 (D. Ariz. filed Apr. 21, 2009); *Goodwin v. Exec.*

21    *Trustee Services, LLC*, No. 09-cv-306 (D. Nev. filed June 9, 2009); *Green v. Countrywide Home*

22    *Loans, Inc.*, No. 09-cv-374 (D. Nev. filed July 10, 2009). The relief sought in this and similar

23    Complaints would undoubtedly "restrain or affect" the Conservator's actions – which HERA

24    plainly bars. 12 U.S.C. § 4617(f).

25

26

27    [5]  In an Order issued on September 24, 2009, the Court in *Cervantes* denied the Plaintiffs'
request to amend the Complaint and granted each of the Defendants' various motions to dismiss

28    all claims asserted in the action. *See Cervantes v. Countrywide*, 09-cv-517 (D. Ariz. Sept. 24,
2009) (attached as Exhibit A).

## ARGUMENT

Plaintiffs fail to meet the standard for a preliminary injunction. Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Stormans, Inc. v. Selecky*, 571 F.3d 960, 977-78 (9th Cir. 2009) (*quoting Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ---, 129 S.Ct. 365, 374, (2008)). Plaintiffs must show "that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374. Plaintiffs fail to meet any of the requisite factors for issuance of preliminary relief.

## I.    PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS OR THAT THEY ARE LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION

Plaintiffs cannot show that they are "likely to succeed on the merits." *Winter*, 129 S.Ct. at 374. This threshold showing is required here because Plaintiffs seek an order that would encroach upon FHFA's statutory powers and duties as Conservator, as specifically defined by Congress. Plaintiffs seeking to "stay government action taken in the public interest pursuant to a statutory or regulatory scheme," must meet a rigorous standard for preliminary injunctive relief. *See Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) (*quoting Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)); *see also Johnson v. Sherman*, No. S-04-2255 LKK EFB P, 2007 WL 1029856 (E.D. Cal. Apr. 2, 2007). In light of the statutory bar on judicial interference with the exercise of the functions and powers of the Conservator and the strong public policy reasons that underlie that statute, the Court should be especially hesitant to order a preliminary injunction in this matter and should strictly apply the requirement that Plaintiffs show a "likelihood of success on the merits."

FHFA incorporates by reference Sections II and III of the Argument Section of the Response of Fannie Mae to Motion For Temporary Restraining Order and Preliminary Injunction ("Fannie Mae Opposition Brief"). For the reasons stated therein and in the briefs of the other defendants, Plaintiffs are unable to show that they are likely to prevail on the merits because, among other things, MERS may lawfully foreclose on loans for which it is the nominee

1    beneficiary. *See e.g., Cervantes, et al. v. Countrywide Home Loans, Inc. et al.*, No. CV 09-517-

2    PHX-JAT (D. Ariz. Sept. 23, 2009) (dismissing nearly identical claims on the basis that the

3    MERS system was not a "sham") (Ex. A). As stated fully below, the broad class-wide relief

4    sought by Plaintiffs in this and nearly identical complaints filed in other similar actions

5    contravenes the plain language of HERA, which bars courts from taking "any action to restrain

6    or affect the exercise of powers or functions of [FHFA] as a conservator." 12 U.S.C. § 4617(f).

7        Furthermore, for the reasons stated in the Fannie Mae Opposition Brief, Plaintiffs fail to

8    show that they are likely to suffer irreparable harm in the absence of an injunction. Accordingly,

9    Plaintiffs' Motion should be denied by this Court.

10   **II.    THE REQUESTED INJUNCTION IS CONTRARY TO THE PUBLIC**
         **INTEREST; THE BALANCE OF THE EQUITIES FAVORS DENIAL OF**
11       **PLAINTIFFS' MOTION**

12       FHFA's primary function is to serve the public interest through the protection and

13   regulation of the secondary mortgage market. Uncertainty in the domestic secondary mortgage

14   market was a major driver of the economic instability and the global economic decline of the last

15   year. To restore public faith in the economy, mitigate systemic risk and stabilize the secondary

16   mortgage market, Director Lockhart placed Fannie Mae and Freddie Mac under Conservatorship

17   pursuant to HERA. The Director's action was made only after FHFA's determination that the

18   Enterprises could not "continue to operate safely and soundly and fulfill their critical public

19   mission."[6] The stability of the U.S. and global economy depends on the efficient and effective

20   operation of the secondary mortgage market, of which Fannie Mae and Freddie Mac are the two

21   largest participating entities. The Conservator's ability to carry out its basic functions, including

22   preserving and conserving the assets of the Enterprises, is directly affected by the Enterprises'

23   ability to foreclose on properties, is vital to the public interest, and is essential to the efficient and

24   effective operation of the secondary mortgage market.

25       Analysis of the equities and the public interest in this matter overwhelmingly favors

26   denial of the relief sought by Plaintiffs. Many mortgages owned by Fannie Mae and Freddie

27

28   [6] Statement of FHFA Dir. James B. Lockhart, 5-6 (Sept. 7, 2008), available at
     http://www.fhfa.gov/webfiles/23/FHFAStatement9708final.pdf.

1    Mac (and controlled by the Conservator) list MERS as the beneficiary on the deed of trust. Were

2    this Court to grant the relief sought by Plaintiffs in this and similar cases, Fannie Mae and

3    Freddie Mac, who together own approximately half of the mortgages in the country, would be

4    effectively barred from foreclosing on an incredibly large portion of the Conservator's assets.

5         Courts sitting in equity should give weight to expressions of the public interest made by

6    Congress through federal statute. *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino*

7    *Litig.*, 340 F.3d 749, 760 (8th Cir. 2003) (*citing United States v. Oakland Cannabis Buyers' Co-*

8    *op.*, 532 U.S. 483, 497-98 (2001)). In *Oakland Cannabis Buyers' Co-op.*, the Supreme Court

9    noted:

> [a] court sitting in equity cannot ignore the judgment of Congress,
> deliberately expressed in legislation. A district court cannot, for
> example, override Congress' policy choice, articulated in a statute,
> as to what behavior should be prohibited. Once Congress,
> exercising its delegated powers, has decided the order of priorities
> in a given area, it is ... for the courts to enforce them when
> enforcement is sought. Courts of equity cannot, in their discretion,
> reject the balance that Congress has struck in a statute.

15   532 U.S. at 497-98.

16        Here, Congress plainly expressed its view of the public interest. Recognizing the vital

17   importance of the Conservator's ability to exercise its powers and functions free from potential

18   interference from a court, Congress expressly prohibited courts from taking "any action to

19   restrain or affect the exercise of powers or functions of [FHFA] as a conservator." 12 U.S.C.

20   § 4617(f).[7] The identical provision of the Financial Institutions Reform, Recovery and

21   Enforcement Act of 1989 (FIRREA),[8] has been characterized as "a direct manifestation of

---

[7] *See In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*, 629 F. Supp. 2d 1,
at 4 n.4 (D.D.C. 2009) ("HERA explicitly prohibits" courts from "tak[ing] action that would
'restrain or affect' FHFA's discretion"); *Esther Sadowsky Testamentary Trust v. Syron*, No. 08-
cv-5221 (BSJ), 2009 WL 1309776, at *1 (S.D.N.Y. May 6, 2009) ("Courts are prohibited from
taking 'any action to restrain or affect the exercise of power or functions' of the FHFA as
conservator.") (*quoting* 12 U.S.C. § 4617(f)); *In re Fed. Home Loan Mortgage Corp. Derivative
Litig.*, No. 1:08-cv-773 (LMB/TCB), 2009 WL 2421447, at *6 (E.D. Va. July 27, 2009) ("HERA
provides that 'no court may take any action to restrain or affect the exercise of power or
functions of the [FHFA] as a conservator or a receiver.'") (*quoting* 12 U.S.C. § 4617(f)).

[8] HERA mirrors the language of FIRREA in almost all respects and the three courts that have
analyzed FHFA's powers under HERA have relied on cases invoking similar or identical
provisions of FIRREA. *See In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, 2009 WL

(Footnote Cont'd on Following Page)

- 8 -

1    Congress's intent to prevent courts from interfering with the [conservator or receiver] in the

2    exercise of its statutory powers." *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir.

3    1994); *see also Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (The

4    identical provision of FIRREA is "essential . . . to carry out . . . basic functions as a receiver free

5    from judicial restraint," and "bars restraint by the courts on the statutory powers of the FDIC

6    when it acts as receiver.") (*citing In re Landmark Land Co. of Okla.*, 973 F.2d 283, 290 (4th Cir.

7    1992); *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 102-04 (5th Cir. 1993); and *Telematics

8    Int'l., Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992)). This broad grant of

9    power and discretion expresses Congress' clear intent to afford FHFA as much flexibility as

10   possible in its efforts to restore the Enterprises to sound financial condition. *See In re Fed. Nat'l

11   Mortgage Ass'n Sec., Derivative, and "ERISA" Litig.*, 629 F. Supp. 2d at 4 n.4 ("Congress has

12   determined that responsibility for deciding how to best preserve and conserve Fannie Mae's

13   assets lies solely with FHFA for the conservatorship period."); *See In re Fed. Home Loan

14   Mortgage Corp. Derivative Litig.*, 2009 WL 2421447, at *4 (same).

15         An injunction or declaratory judgment prohibiting the Enterprises from foreclosing on

16   their loans would directly affect the exercise of the Conservator's statutory powers and duties.

17   As numerous courts have held, the statutory language present in HERA bars courts from

18   enjoining foreclosures of assets controlled by conservators or receivers. *See, e.g., 281-300 Joint

19   Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991) ("[C]ourts lack the ability to enjoin nonjudicial

20   foreclosures that are within the statutory powers of the RTC as conservator or receiver.");

21   *Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 112 (1st Cir. 1994) (noting that FIRREA's "broad

22   array of powers easily encompasses the grant of a general power to foreclose on properties that

23

24   (Footnote Cont'd From Previous Page)
     2421447, at *3 ("[T]he Court is persuaded by decisions that have reached the same conclusion
25   when interpreting [FIRREA], whose provisions regarding the powers of bank receivers and
     conservators are substantially identical to those of HERA."); *In re Fed. Nat'l Mortgage Ass'n
26   Sec., Derivative, and "ERISA" Litig.*, 629 F. Supp. 2d at 4 n.4 (relying on analysis from *Pareto
     v. FDIC*, 139 F.3d 696 (9th Cir. 1998), which "confronted a similar provision in [FIRREA],
27   which for the first time vested in the FDIC 'all rights, titles, powers and privileges' of
     shareholders when a bank entered FDIC receivership."); *Esther Sadowsky Testamentary Trust*,
28   2009 WL 1309776, at *2 ("The Court finds persuasive the Report's analogy to the statutory
     language and interpretation of [FIRREA].").

1   the failed institution held as collateral"); *Lloyd v. FDIC*, 22 F.3d 335, 336 (1st Cir. 1994) (stating

2   that FIRREA provides the FDIC "the power as receiver to foreclose on the property of a

3   debtor"); *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1036 (4th Cir. 1994) ("It is

4   abundantly clear that the RTC is authorized to pursue its foreclosure of Tillman's property and

5   that the courts may not interfere by entering any injunction to halt the sale."); *Ramos v. NDEX*

6   *West, LLC*, No. 1:09-cv-00190, 2009 WL 1675911, at *3 (E.D. Cal. June 1, 2009) (holding that

7   because "courts lack jurisdiction to enjoin or restrain the FDIC's exercise of its powers as a

8   Receiver or Conservator" pursuant to FIRREA, "[t]his court is similarly without power to enjoin

9   FDIC's attempts to foreclose on Plaintiff's property").

10          Moreover, alleged state-law violations or violations of other federal statutory schemes do

11   not provide an exception to the clear statutory prohibition on judicial interference with a

12   Conservator's exercise of its powers or functions. *Ward*, 996 F.2d at 103 (denying rescission of

13   sale by RTC and stating that "so long as the RTC is 'exercis[ing] judgment under one of its

14   enumerated powers,' . . . courts may not enjoin an activity on the basis of an allegation that the

15   RTC is not 'running [the institution's] affairs in a legal manner"); *Gross v. Bell Savings Bank PA*

16   *SA*, 974 F.2d 403, 407 (3d Cir. 1992) (overturning district court opinion finding that the RTC

17   acted outside its powers by withholding more than the insured amount authorized under 12

18   U.S.C. § 1822(d) and holding instead that "where the RTC performs functions assigned it under

19   the statute, injunctive relief will be denied even where the RTC acts in violation of other

20   statutory schemes") (citations omitted); *Rosa*, 938 F.2d at 397 (holding that the anti-injunction

21   provision applied to bar court action even where the plaintiff alleged that the RTC's termination

22   of the ERISA plan was illegal and therefore was not among the powers or functions of the RTC

23   as conservator or receiver); *Volges*, 32 F.3d at 52 ("[T]he fact that the RTC's actions might

24   violate some other provision of law does not render the anti-injunction provision inapplicable.");

25   *Costa v. Resolution Trust Corp.*, 789 F. Supp. 43, 44 (D. Mass. 1991) (holding that the court was

26   precluded by statute from granting equitable relief despite plaintiffs' allegations that the exercise

27   of the power in question was not done in compliance with applicable state law); *Furgatch v.*

28   *Resolution Trust Corp.*, No. 93-20304, 1993 WL 149084, at *2 (N.D. Cal. Apr. 30, 1993)

1    ("Injunctive relief is also unavailable even in the face of allegations that the conservator or

2    receiver has acted wrongfully or illegally.") (citations omitted).

3         The Ninth Circuit has recognized this principle and held that "'the fact that the RTC's

4    actions might violate some other provision of law does not render the anti-injunction provision

5    inapplicable.'" *Sharpe*, 126 F.3d at 1154 (*quoting Vogles*, 32 F.3d at 52).[9]  As the D.C. Circuit

6    stated:

> We do not think it possible, in light of the strong language of
> § 1821(j), to interpret the FDIC's "powers" and "authorities" to
> include the limitation that those powers be subject to – and hence
> enjoinable for non-compliance with – any and all other federal
> laws.  While Congress has included such provisos in some statutes
> immunizing agency action from outside second-guessing, *see, e.g.,*
> 5 U.S.C. § 7106(a)(2) (management rights immunized from
> arbitral review under Federal Labor Relations Act only when
> exercised "in accordance with applicable laws"), we see no such
> limitation in § 1821(j).

13   *Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993) ("*Nat'l Trust I*"),

14   *reinstated in relevant part*, 21 F.3d 469, 470 (D.C. Cir. 1994) ("*Nat'l Trust II*"); *see also Nat'l*

15   *Trust II*, 21 F.3d at 472 (Wald, J., concurring) ("[T]he statute would appear to bar a court from

16   acting in virtually all circumstances.").

17        Even where the typical standards for issuance of a preliminary injunction may be met,

18   HERA bars courts from granting injunctive relief.  For example, in *281-300 Joint Venture*, the

19   plaintiffs sought to enjoin the FDIC from foreclosing on their properties on the grounds that the

20   plaintiffs had a substantial likelihood of prevailing on the merits of the case and would suffer

21   irreparable injury from the foreclosure.  The court in that action held that "the court may not

22   enjoin the exercise of the RTC's powers in this instance regardless of [plaintiff's] likelihood of

23

---

24   [9] In *Sharpe*, the court held that because FIRREA requires the FDIC to "pay all valid obligations
25   of the insured depository institution" and dictates that the FDIC may escape the obligations of
     contracts "only through the [statutorily] prescribed mechanism," the FDIC's unilateral breach of
26   a settlement agreement instead of following the statutorily proscribed mechanism for repudiating
     contracts was not a "statutorily authorized function" of the receiver.  *Sharpe*, 126 F.3d at 1155.
27   Here, HERA does not prescribe a narrow mechanism limiting the circumstances or procedures
     under which the Conservator must exercise its power to foreclose on assets in default.
28   Accordingly, and for the reasons stated above, the ability of the Conservator to foreclose on
     assets in default is plainly a statutory power granted by HERA.

1  success on the underlying claims." *281-300 Joint Venture*, 938 F.2d at 39; *see also Ward*, 996

2  F.2d at 102.

3       Given the importance of the Conservator's work to the health and stability of the

4  secondary mortgage market, and in light of the express public interests set forth by Congress in

5  HERA to require the Conservator to preserve and conserve the assets of the Enterprises and to

6  grant the Conservator broad discretion to carry out that function without court interference, the

7  Court should deny the equitable relief Plaintiffs seek.

8                                    **CONCLUSION**

9       For the reasons stated herein, FHFA as Conservator for Fannie Mae and Freddie Mac

10  respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction.

11  DATED:  September 30, 2009                   Respectfully submitted,

12  *Of Counsel:*

13  Stephen E. Hart (*Pro Hac Vice Pending*)
    FEDERAL HOUSING FINANCE AGENCY       _____
14  1700 G St., NW                         STEVEN E. GUINN
                                           Nevada Bar No. 5341
15  Washington, DC 20552                   MICHAEL W. LARGE
    T: 202-414-3800                        Nevada Bar No. 10119
16                                         LAXALT & NOMURA
                                           9600 Gateway Drive
17  Howard N. Cayne (*Pro Hac Vice Pending*)*  Reno, NV 89521
    David B. Bergman (*Pro Hac Vice Pending*)  Telephone: 775.322.1170
18  David D. Fauvre (*Pro Hac Vice Pending*)   Facsimile: 775.322.1865
    ARNOLD AND PORTER, LLP
19  555 Twelfth Street, NW                 ***Attorneys for the Federal Housing Finance***
    Washington, DC  20004-1206             ***Agency as Conservator of Fannie Mae and***
20  Telephone:  202.942.5000               ***Freddie Mac***
    Facsimile: 202.942.5999
21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I certify that I am an employee of Laxalt & Nomura and not a party to, nor interested in, the within action; that on the _____ day of _____, 2009, a true and correct copy of the foregoing ***OPPOSITION OF INTERVENOR FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR FOR FANNIE MAE AND FREDDIE MAC TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES THERETO*** was transmitted electronically through the Court's CM/ECF electronic notice system*, to the attorneys associated with this case.

Dated: _____, 2009

_____
Yvonne Larssen, An Employee of Laxalt & Nomura, Ltd

**EXHIBIT "A"**

**EXHIBIT "A"**

1   **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   (1) Olga Cervantes, an unmarried woman,)     No. CV 09-517-PHX-JAT (Lead)
    et al.,                                  )
10                                            )
              Plaintiffs,                     )   **ORDER**
11                                            )
    vs.                                       )
12                                            )
13  (1) Countrywide Home Loans, Inc., a New)
    York corporation, et al.,                )
14                                            )
              Defendants.                     )
15                                            )
    _____     )
16

17          Pending before this Court are numerous motions to dismiss by various party

18  Defendants, Plaintiffs Olga Cervantes, Carlos Almendarez, and Arturo Maximo's Motion to

19  Amend First Amended Complaint (Doc. # 189), and Defendants' Motion to Transfer and

20  Consolidate (Doc. # 194). For the reasons that follow, the Court denies Plaintiffs' motion

21  to amend, denies Defendants' motion to consolidate as moot, and grants the various motions

22  to dismiss.[1]

23                             **BACKGROUND**

24          In September 2006, Plaintiff Cervantes refinanced her residence by executing a

25  promissory note and deed of trust in favor of Defendant Countrywide Home Loans, with

26  _____

27      [1] Several Defendants have joined in various motions to dismiss and/or replies in
    support of motions to dismiss. To the extent the Court need address these joinders, they are
28  granted.

1   Mortgage Electronic Registration Systems, Inc. ("MERS"), listed as the beneficiary.   In
2   December 2006, Plaintiff Almendarez purchased his residence through entering into a
3   promissory note secured by a deed of trust in favor of First Franklin, with MERS listed as
4   the beneficiary.  In October 2006, Plaintiff Maximo purchased his residence, funded in part
5   by a promissory note secured by a deed of trust in favor of First Franklin, with MERS listed
6   as the beneficiary.

7       In February 2009, after Plaintiff Almendarez discontinued making payments on his
8   note, Almendarez's residence was sold at a public auction.  In August 2008, Maximo
9   discontinued making payments on his promissory note.  A Notice of Trustee's Sale was
10  recorded with the Maricopa County Recorder on December 23, 2008.  A public auction was
11  to be held on March 24, 2009, concerning the sale of Maximo's residence.   The public
12  auction was rescheduled for April 24, 2009.  On April 22, Maximo filed with this Court a
13  Notice of Defendant's Cancellation of Trustee's Sale and Plaintiff's Request for Hearing on
14  Preliminary Injunction (Doc. # 56).  In his notice, Maximo related that the public auction
15  scheduled for April 24 had been canceled.  In light of this cancellation, this Court denied
16  Maximo's request for a preliminary injunction.  (Doc. # 185.)

17      In March 2009, Plaintiffs collectively brought this present action, alleging violations
18  of the Truth in Lending Act, Real Estate Settlement Procedures Act, Home Ownership and
19  Equity Protection Act, Fair Housing Act, Arizona Consumer Fraud Act.  Plaintiffs also seek
20  damages from state law claims of conspiracy to commit fraud and conversion, as well as for
21  intentional infliction of emotional distress.  Lastly, Plaintiffs seek injunctive and declaratory
22  relief.

23                          **ANALYSIS**

24                          *Motions to Dismiss*

25      "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Navarro*
26  *v. Block,* 250 F.3d 7129, 732 (9th Cir.2001).  "To survive a motion to dismiss, a complaint
27  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
28  plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

- 2 -

1 *Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a

2 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

3 acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are

4 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

5 and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

6      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

7 detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to

8 relief requires more than labels and conclusions, and a formulaic recitation of the elements

9 of the cause of action will not do." *Twombly*, 550 U.S. at 545 (internal quotations, citations

10 and alterations omitted). "Determining whether a complaint states a plausible claim for relief

11 . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

12 experience and common sense. But where the well-pleaded facts do not permit the court to

13 infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

14 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting FED.

15 RULE CIV. PROC. 8(a)(2)) (citation omitted).[2]

16                                    *Count I*

17      In their first claim for relief, Plaintiffs allege various violations of the Truth in

18 Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, including inadequate disclosures,

19 improper charges, and failed notices. Defendants First Franklin and Countrywide Home

20 Loans move to dismiss Plaintiffs' first cause of action for a failure to state a claim pursuant

21 to Rule 12(b)(6), while Defendant National City Bank ("NCB") moves to dismiss Plaintiff's

22 first cause of action for lack of standing.

23      The Court will analyze standing first because "[s]tanding is the threshold issue of any

24 federal action, a matter of jurisdiction because 'the core component of standing is an essential

25 and unchanging part of the case-or-controversy requirement of Article III.'" *Local Nos. 175*

26 _____

27      [2] Although there were various exhibits attached to certain motions to dismiss,
responses, or replies, the Court makes clear that it did not consider anything beyond the
28 complaint in deciding the motions to dismiss.

1   *& 505 Pension Trust v. Anchor Cap.*, 498 F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v.*

2   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In order to establish Article III standing,

3   a plaintiff must demonstrate: "(1) it has suffered an 'injury in fact' that is (a) concrete and

4   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is

5   fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to

6   speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,*

7   *Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

8        Defendant NCB premises its argument that Plaintiffs lack standing to sue NCB on

9   Plaintiffs not having been personally injured by NCB. That is, Plaintiffs' do not allege that

10   they actually received a mortgage loan from NCB. Rather, Plaintiffs "seek to assign liability

11   to NCB solely because First Franklin was a subsidiary of NCB." (Doc. # 128 at p. 8.) In

12   response, Plaintiffs argue that NCB did in fact extend loans to Plaintiffs because Plaintiff

13   Almendarez and Plaintiff Maximo's deeds of trust were executed in favor of "First Franklin,

14   a Division of National City Bank." The Court concludes that Plaintiffs have failed to carry

15   their burden demonstrating that they have standing to sue NCB under Counts I, II, and IV.

16        Plaintiffs' have failed, both in their complaint and in their response to NCB's motion

17   to dismiss, to demonstrate that NCB participated in the origination of any of Plaintiffs' loans.

18   The only connection between Plaintiffs' loans and NCB is the phrase "First Franklin, a

19   Division of National City Bank" contained in Plaintiffs Almendarez and Maximo's deeds of

20   trust. Yet, even this phrase makes clear that the deeds of trust are being executed in favor

21   of First Franklin. At most, this phrase in the deeds of trust demonstrates that First Franklin

22   is a mere corporate relation of NCB. However, this is not the equivalent of NCB extending

23   a loan to Plaintiffs, or otherwise participating in the loan origination process in violation of

24   TILA. *See Royal Indus. v. St. Regis Paper Co.* 420 F.2d 449, 453 (9th Cir. 1969) ("The

25   separate identities of a parent and its subsidiary, even a wholly owned subsidiary, will not

26   be disregarded unless a recognition of their separateness, under the circumstances, would

27

28

-4-

1    sanction a fraud or promote injustice."). Plaintiffs have failed to demonstrate that their

2    alleged injuries are fairly traceable to NCB.[3]

3        The Court next addresses Defendants First Franklin and Countrywide's motion to

4    dismiss pursuant to Rule 12(b)(6). Defendants argue that Plaintiffs' allegations contained

5    in their first claim of relief are merely generalized allegations containing labels and

6    conclusions and, as such, are insufficient under *Twombly*. The Court disagrees.

7        While certain of Plaintiffs' allegations in Count I do contain formulaic recitation of

8    the elements for TILA violations, Plaintiffs included a sufficient amount of factual

9    allegations to survive a Rule 12(b)(6) motion. For example, Plaintiff Almendarez alleges that

10    he was not provided with a final calculation of the interest rate, finance charges, or the annual

11    percentage rates on the final amount of his mortgage. Moreover, Plaintiffs Almendarez and

12    Maximo allege that they only speak Spanish and that none of the closing documents were

13    translated into Spanish. Plaintiffs also assert that Defendants calculated the annual

14    percentage rate based upon improperly disclosed amounts. Such allegations suffice for the

15    Rule 12(b)(6) stage of the proceedings.

16        However, Defendants also argue that Plaintiffs' allegations in Count I are time-barred

17    under the applicable statute of limitations. In response, Plaintiffs assert that they sufficiently

18    alleged equitable tolling such that the statute of limitations does not preclude their first claim

19    for relief. The Court finds that the statute of limitations applies.

20        A cause of action brought under TILA must be commenced "within one year from the

21    date of the occurrence of the violation." 15 U.S.C. § 1640(e). Each Plaintiff obtained his or

22    her loan in 2006. This present action was commenced in March of 2009. Hence, under

23    section 1640(e), Plaintiffs' TILA claims are barred absent any applicable exclusions.

24        The general rule is that the statute of limitations period commences at the

25    consummation of the transaction. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

26

27        [3] Even if the Court concluded that Plaintiffs had standing to sue NCB, for the reasons

28    stated later in this Order, Plaintiffs' claims against NCB would likewise be dismissed.

1   However, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend
2   the limitations period until the borrower discovers or had reasonable opportunity to discover
3   the fraud or nondisclosures that form the basis of the TILA action." *Id.* "Equitable estoppel,
4   also termed fraudulent concealment, halts the statute of limitations when there is active
5   conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim
6   is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706
7   (9th Cir. 2006) (quotations omitted).

8          Here, Plaintiffs allege that Defendants "fraudulently misrepresented and concealed
9   the true facts related to the items subject to disclosure," and Plaintiffs "did not discover the
10  Defendants' failure to make the disclosures pursuant to 15 U.S.C. § 1638 until one year
11  within the filing of this complaint." (Doc. # 5 at p. 25, ¶¶ 96-97.) Such statements are the
12  only allegations pertaining to equitable estoppel in Plaintiffs' complaint. Plaintiffs do not
13  allege any facts supporting these legal conclusions, such as how Defendants fraudulently
14  misrepresented or concealed the true facts, or why Plaintiffs were otherwise precluded from
15  discovering the TILA violations at the consummation of their loans–the general rule for when
16  the statute of limitations commences under section 1638. Such factual underpinnings are all
17  the more important in such a case as the one before the Court since the vast majority of
18  Plaintiffs' alleged violations under TILA are violations that are self-apparent at the
19  consummation of the transaction–*e.g.*, not being provided a notice of one's right to rescind
20  the transaction at the time of closing, not being properly provided with the annual percentage
21  rate, finance charges, total amount financed, payment schedule, etc. Plaintiffs' assertions
22  pertaining to equitable estoppel are pure legal conclusions devoid of any supporting factual
23  allegations. The Court finds that Plaintiffs have failed to adequately allege a claim for
24  equitable tolling such that the one-year statute of limitation contained in 15 U.S.C. § 1638
25  should not apply. Accordingly, the Court applies the general rule under section 1638 and
26  finds that Plaintiffs' claims under TILA are time-barred.

27  ///
28  ///

1

*Count II*

2       In their second claim for relief, Plaintiffs allege violations of the Real Estate
3   Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.* Specifically, Plaintiffs
4   allege that: Defendants failed to provide a uniform settlement statement and a special
5   information booklet, including a good faith estimate of the amount of charges for settlement
6   services; Defendants were required to inform Plaintiffs at the time of application for their
7   loans whether the servicing of the loans could be sold or transferred and, if the loans were
8   sold or transferred, Plaintiffs are entitled to 15 days notice before the sale or transfer;
9   Defendants were prohibited from paying any fee, kickback, or thing of value as a part of the
10   real estate settlement service involving the loans; Defendants were required to disclose any
11   controlled business arrangements; and Defendants charged Plaintiffs with unreasonably high
12   fees and charges for settlement services. The Court finds that Plaintiffs have not stated a
13   viable claim for relief under count two.

14       Plaintiffs' claims that Defendants violated RESPA by failing to provide a uniform
15   settlement statement, a special information booklet, and a good faith estimate of the amount
16   of charges for settlement services fail because there is no private cause of action for such
17   alleged violations of RESPA. *Bloom v. Martin,* 865 F.Supp. 1377, 1383-85 (N.D.Cal.1994);
18   *Walker v. Artisan Mortgage, LLC*, 2008 WL 2026365, * 3 (D. Ariz. 2008).

19       Plaintiffs' next claim that Defendants were required to inform them whether the
20   servicing of the loans could be sold or transferred, and if the loans were to be sold or
21   transferred, Plaintiffs are entitled to 15 days notice before the sale or transfer, likewise fails.
22   Under section 2605, which is the rubric of RESPA that Plaintiffs' allegations fall under, a
23   plaintiff must allege actual damages resulting from a violation of section 2605. 12 U.S.C.
24   § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable
25   to the borrower for each such failure in the following amounts: . . . In the case of any action
26   by an individual, an amount equal to the sum of-- (A) any actual damages to the borrower
27   as a result of the failure."); *Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, *3
28   (N.D.Tex. 2006); *Hepler v. Washington Mut. Bank, F.A.*, 2009 WL 1045470, *4-5 (C.D.Cal.

- 7 -

1    2009). Plaintiffs have failed to allege any such damages. As such, their claims under section
2    2605 fail.

3         Plaintiffs' next allegation under Count II states that "Pursuant to 12 U.S.C. § 2607(a),
4    Defendants were prohibited from paying any 'fee, kickback, or thing of value' to any person
5    as part of the real estate settlement service involving the loans described herein." (Doc. # 5
6    at p. 28, ¶ 109.) Plaintiffs' allegation falls short of the Rule 12(b)(6) standard propounded
7    by *Twombly* and *Iqbal*. Plaintiffs merely state that Defendants were prohibited from
8    violating section 2607(a). Plaintiffs do not actually allege that Defendants violated section
9    2607(a) and, more importantly, Plaintiffs do not provide any facts supporting such an
10   assertion. At most, Plaintiffs have provided a legal conclusion pertaining to 12 U.S.C. §
11   2607(a) and, as such, Plaintiffs' claim fails under a  Rule 12(b)(6) motion.

12        Similarly, Plaintiffs' claim that Defendants were required to disclose any "controlled
13   business arrangements" fails under *Twombly* and *Iqbal*. (Doc. # 5 at p. 28, ¶ 110.) Plaintiffs
14   allege only a one-sentence legal conclusion, providing no facts in support of their allegation.
15   Moreover, the Court is unable to discover where the phrase "controlled business
16   arrangements" is found in 12 U.S.C. §§ 2601 *et seq*. RESPA contains the phrase "affiliated
17   business arrangement," yet Plaintiffs fail to allege to whom Defendants directly or indirectly
18   improperly referred business. Nor do Plaintiffs allege that they were required to use such a
19   provider within the context of section 2607. Accordingly, Plaintiffs' claim fails.

20        Lastly under RESPA, Plaintiffs allege that Defendants charged unreasonably high fees
21   and charges for settlement services. As several courts have recognized, however, RESPA
22   was not intended to serve as a price cap for settlement services, and the text of RESPA does
23   not support such an allegation. *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594,
24   604, (N.D.Cal. 2007) (dismissing similar claim and collecting cases).

25        Therefore, the Court finds that Plaintiffs have failed to allege a claim under RESPA
26   for which relief may be granted and, as such, the Court dismisses Plaintiffs' claims under
27   Count II.

28   ///

1

*Count III*

2      In her third claim for relief, Plaintiff Cervantes alleges a violation of the Home

3 Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1610, and 1639.

4 However, in Plaintiffs' motion to amend their first amended complaint, Plaintiff Cervantes

5 seeks to withdraw her HOEPA claim. (Doc. # 189 at pp. 1-2.) Thus, the Court need not

6 address Plaintiff Cervantes' claims under HOEPA.

7

*Count IV*

8      In Plaintiffs' fourth claim for relief, they allege a violation of the Fair Housing Act

9 ("FHA") 42 U.S.C. §§ 3601, *et seq.* Specifically, Plaintiffs allege that Defendants offered

10 Plaintiffs "a less-than-favorable loan" based upon Plaintiffs' race and that Defendants

11 targeted Plaintiffs for predatory lending because of Plaintiffs race. (Doc. # 5 at p. 34, ¶¶ 133-

12 34.) In response, Defendants argue that Plaintiffs fail to state a cognizable claim for relief.

13 The Court agrees with Defendants.

14      In the discrimination context, a plaintiff must do more than simply allege a generalize

15 discrimination. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (stating in the

16 employment discrimination context that "it is not enough to simply allege that there is a

17 disparate impact on workers, or point to a generalized policy that leads to such an impact.

18 Rather, the employee is responsible for isolating and identifying the *specific* employment

19 practices that are allegedly responsible for any observed statistical disparities") (quotations

20 omitted). Here, Plaintiffs allege nothing more than Defendants "purposefully targeted"

21 Plaintiffs because of their race and Plaintiffs received "a less-than-favorable loan than would

22 have been offered to a white borrower." (Doc. # 5 at p. 34, ¶¶ 133-34.) Such allegations,

23 again, are mere legal conclusions. Plaintiffs do not allege any facts supporting such

24 allegations–*e.g.*, Plaintiffs were qualified for a better loan based upon objective indicators

25 such as income and credit ratings, Defendants offered similarly situated borrowers outside

26 of Plaintiffs' racial class more beneficial loan options, etc. Thus, the Court finds that

27 Plaintiffs have failed to state a plausible claim for relief under FHA.

28

- 9 -

1    In any event, Plaintiffs' claims under Count IV are time-barred. Discrimination
2  claims under FHA have a two-year statute of limitations time period. 42 U.S.C. § 3613
3  (a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United
4  States district court or State court not later than 2 years after the occurrence or the
5  termination of an alleged discriminatory housing practice."). As described in the discussion
6  under Count I, Plaintiffs obtained their loans in 2006 and brought this present action in
7  March 2009.   As such, Plaintiffs' claims fall outside the two-year time limitation.
8  Nevertheless, Plaintiffs allege a continuing violation theory.

9    Under the continuing violation theory, when "a plaintiff, pursuant to the Fair Housing
10  Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice
11  that continues into the limitations period, the complaint is timely when it is filed within . .
12  . the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S.
13  363, 380-81 (1982). However, "[a] continuing violation is occasioned by continual unlawful
14  acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144,
15  1147 (9th Cir.1981). The Court finds that Defendants' issuing of the loans in question were
16  one-time acts. Even if the Court assumed that Defendants' actions violated the FHA, the
17  discriminatory act took place at the time Defendants extended the loan to Plaintiffs.
18  Therefore, because Plaintiffs filed their action under FHA more than two-years after the
19  alleged discriminatory acts, Plaintiffs' FHA claims are time-barred.[4]

20                                    *Count V*

21    In their fifth claim for relief, Plaintiffs argue that Defendants violated the Arizona
22  Consumer Fraud Act ("ACFA"), Arizona Revised Statutes ("A.R.S.") section 44-1522, *et*
23  *seq.*, by using "deception, false promises, and misrepresentation regarding the terms of the
24
25    _____
26  [4] Plaintiffs' allegation that "Defendants have engaged in a pattern or extended
practice of exploiting the market of Hispanics in the market area where Plaintiffs reside"
27  (Doc. # 5 at p. 35, ¶ 137) is a mere legal conclusion unsupported by any factual allegations
and, as such, is not a plausible claim for a continuing violation under the standards
28  enunciated by *Twombly* or *Iqbal*.

                                    - 10 -

1  loan offered to" Plaintiffs. Defendants argue that Plaintiffs' claims under Count V are time-
2  barred and, in any event, they fail to state a claim under Rule 12(b)(6). The Court need not
3  reach Defendants' latter argument, as the Court finds that Plaintiffs' claims under Count V
4  are barred by the applicable statute of limitations.

5         Actions commenced pursuant to A.R.S. § 44-1522 must be brought within one year.
6  A.R.S. § 12-541(5) (2003) ("There shall be commenced and prosecuted within one year after
7  the cause of action accrues, and not afterward, the following actions: . . . Upon a liability
8  created by statute, other than a penalty or forfeiture."). An action accrues under ACFA
9  "when the defrauded party discovers or with reasonable diligence could have discovered the
10 fraud." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (quoting *Mister*
11 *Donut of Am., Inc. v. Harris,* 723 P.2d 670, 672 (1986)). Put another way, a cause of action
12 under ACFA "accrues when 'the plaintiff knows or should have known of both the *what* and
13 *who* elements of causation.'" *Alaface*, 892 P.2d at 1379 (quoting *Lawhon v. L.B.J.*
14 *Institutional Supply, Inc.,* 765 P.2d 1003, 1007 (App.1988)).

15        Here, as described in the discussion under Count I, Plaintiffs obtained their loans in
16 2006 and brought this present action in March 2009. The *who* of Plaintiffs' cause of action
17 under ACFA was known at the time Plaintiffs obtained their loans, as Plaintiffs' make no
18 allegations to the contrary and the named Defendants under Count V are the very Defendants
19 Plaintiffs allege are responsible for the origination of their loans. Plaintiffs allege, however,
20 that they "learned of Defendants' violation of A.R.S. § 44-1522 within one year of the filing
21 of this complaint." (Doc. # 5 at p. 37, ¶ 145.) Thus, Plaintiffs allege that their cause of
22 action accrued within one year of the filing of their complaint because they did not know the
23 *what* element of their ACFA claim. However, the test for when a cause of action accrues is
24 not only what the plaintiff actually knew, but what he or she *should have known or could*
25 *have discovered* with reasonable diligence. *Alaface*, 892 P.2d at 1379.

26        Plaintiffs allegations under ACFA, even when assumed to be true, are all related to
27 facts that were discoverable at the time Plaintiffs entered into their loan transactions. The
28 allegations revolve around the very terms of the loans, such as interest rate, payments to be

- 11 -

1   made under the loan, and Plaintiffs' ability to refinance. Plaintiffs do not allege that the
2   terms Defendants seek to enforce are different or somehow an alteration from the promissory
3   notes Plaintiffs signed. Rather, Plaintiffs' allegations amount to a claim that the terms
4   contained in the promissory notes are material deviations from the terms Plaintiffs were
5   promised before entering into the loan transactions. Even assuming there are material
6   deviations to support a claim under ACFA, the *"what* element of causation" was apparent
7   at the time Plaintiffs entered into the loan transactions–Plaintiffs could have discovered the
8   deviations in the documents they were signing. Accordingly, Plaintiffs' ACFA cause of
9   action accrued upon entering their loan transactions and are therefore precluded under
10  A.R.S. § 12-541(5).

11                                    *Count VI*

12          In their sixth claim for relief, Plaintiffs allege that Defendants Countrywide, NCB,
13  First Franklin, and Mortgage Electronic Registration Systems, Inc. ("MERS") conspired to
14  commit both fraud and conversion. Defendants respond that Plaintiffs have failed to state
15  a claim for civil conspiracy.

16          In Arizona, there is no independent tort of conspiracy. *Hansen v. Stoll*, 636 P.2d
17  1236, 1242 (Ariz. Ct. App. 1981). "A civil conspiracy requires an underlying tort which the
18  alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart
19  Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 259 (Ariz. Ct. App. 2000). In this case, Plaintiffs
20  allege underlying torts of fraud and conversion.

21          "Arizona has adopted the following definition of conversion . . . 'Conversion is an
22  intentional exercise of dominion or control over a *chattel* which so seriously interferes with
23  the right of another to control it that the actor may justly be required to pay the other the full
24  value of the *chattel*.'" *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (quoting
25  RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965)) (emphasis added). "'An action for
26  conversion ordinarily lies only for personal property that is tangible, or to intangible property
27  that is merged in, or identified with, some document.'" *Miller*, 104 P.3d at 203 (quoting 18
28  Am.Jur.2d, Conversion § 7 (2004)). Plaintiffs allegations amount to conversion not of chattel

- 12 -

1   or personal property, but real property.[5]  However, there is no tort of conversion of real

2   property in Arizona.  *See Strawberry Water Co. v. Paulsen*, 207 P.3d 654, 659 (Ariz. Ct.

3   App. 2008) (distinguishing different types of water types and stating that "[w]ater rights are

4   real property interests, and thus cannot be converted because they are not chattels.")

5   (citations omitted).  Moreover, even if Plaintiffs' claims do involve "chattel," Plaintiffs have

6   failed to allege how Defendants exercised dominion or control in such a manner that

7   Plaintiffs did not have the right to control the chattel.  Accordingly, the Court finds that

8   Plaintiffs' claim for conspiracy based upon conversion fails to state a claim upon which relief

9   may be granted.

10       Regardless of the merits of Plaintiffs' underlying claims for fraud and conversion,

11   Plaintiffs' claim that Defendants conspired to commit fraud and conversion is insufficient

12   both for a failure to plead conspiracy with the requisite particularity and for a failure to plead

13   an agreement to participate in the fraud and conversion.  "In alleging fraud or mistake, a

14   party must state with particularity the circumstances constituting fraud or mistake."  FED. R.

15   CIV. P. 9(b).  Plaintiffs allegations with respect to fraud were not made with particularity.

16   Rather, Plaintiffs' allegations amount to mere conclusory statements and general averments

17   of fraud.

18       Plaintiffs allege that Defendants: formed an association to conspire in order to deprive

19   Plaintiffs of their property; knew Plaintiffs would be unable to pay the loans and, thus,

20   Defendants would be in a position to seize Plaintiffs' real property through foreclosure; and

21   targeted Plaintiffs for the purpose of misrepresenting the terms of the loans in order to seize

22

---

23       [5] Plaintiffs argue in their response to Defendants' motion to dismiss that they have

24   "stated a claim for conversion in that Plaintiffs had a right to be free from illegal
     foreclosures, and a right to the full disclosures mandated by federal law."  (Doc. # 156 at p.

25   14.)  However, Plaintiffs fail to cite any Arizona cases recognizing an action for conversion
     based upon an illegal foreclosure or for incomplete disclosures.  Moreover, the Court fails

26   to see how the right to be free from an illegal foreclosure (or an incomplete disclosure) is not
     related and integral to Plaintiffs' real property rights in the said properties.  Stated another

27   way, the Court does not believe that Plaintiffs' right to be free from an illegal foreclosure can

28   properly be divorced from Plaintiffs' real property rights.

1   Plaintiffs' properties.  Plaintiffs also repeat their allegations that Defendants violated TILA,
2   RESPA, HOEPA, ACFA, and the Fair Housing Act.  Plaintiffs do not allege that Defendants
3   entered into an express agreement to commit fraud and conversion.  Rather, Plaintiffs allege
4   that Defendants "formed an association to conspire."  (Doc. # 5 at p. 38 at ¶ 148.)  "[A]
5   plaintiff must allege with sufficient factual particularity that defendants reached some explicit
6   or tacit understanding or agreement.  It is not enough to show that defendants might have had
7   a common goal unless there is a factually specific allegation that they directed themselves
8   towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co.*
9   *v. Sw. Gas Corp.*, 165 F.Supp.2d 1010, 1020-21 (D. Ariz. 2001) (quoting Alfus v. Pyramid
10  Technology Corp., 745 F.Supp. 1511, 1521 (N.D. Cal. 1990)).  Plaintiffs have not stated how
11  or even when the alleged conspiracy was formed.  Plaintiffs have also not included any
12  factual allegations pertaining to how Defendants targeted Plaintiffs.  Plaintiffs' allegations
13  amount to a claim that Defendants somehow formed a conspiracy with the intent to provide
14  Plaintiffs with a loan, the terms of which they could not afford, thus permitting Defendants
15  to gain control of the properties through foreclosure.  "But terms like 'conspiracy,' or even
16  'agreement,' are border-line: they might well be sufficient in conjunction with a more
17  specific allegation–for example, identifying a written agreement or even a basis for inferring
18  a tacit agreement–but a court is not required to accept such terms as a sufficient basis for a
19  complaint. The case law on this point is ample." *DM Research, Inc. v. Coll. of Am.*
20  *Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (cited with approval in *Twombly*, 550 U.S. at
21  557).  Plaintiffs have failed to provide any specific, factual allegations inferring even a tacit
22  agreement.  As such, Plaintiffs sixth claim for relief falls short of the requirements of Rule
23  9(b), *Twombly*, and *Iqbal*.

24                                    *Count VII*

25          In their seventh claim for relief, Plaintiffs assert that the various named Defendants
26  that are members of the MERS system, conspired to commit fraud through the MERS
27  system.  In response, Defendants filed several motions to dismiss raising similar arguments
28  under Rules 9(b) and 12(b)(6), as well as joining in the motions to dismiss of other named

                                    - 14 -

1 Defendants. The Court need not reiterate each of the arguments, as Plaintiffs have failed to

2 state a viable claim for relief for conspiracy to commit fraud under Rule 12(b)(6). At its

3 core, Plaintiffs' claim for conspiracy to commit fraud is an attack on the MERS system.

4 However, because Plaintiffs claim that the MERS system is a fraud fails as a matter of law,

5 Plaintiffs' claim for conspiracy to commit fraud based upon the MERS system likewise must

6 fail.

7   MERS is a wholly owned subsidiary of MERSCORP, a Virginia corporation. Various

8 of the named Defendant banks and lending institutions are shareholders in MERSCORP and

9 participants in the MERS system. Under the MERS system, at the origination of a residential

10 loan, the lender takes possession of a promissory note and the borrower and lender agree to

11 designate MERS as the beneficiary under a deed of trust. Under the MERS system, the rights

12 to the mortgage are tracked internally and not recorded in the public records each time the

13 rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS

14 system. Plaintiffs' complaints from this system are two-fold: (1) MERS is never really a

15 beneficiary under the deed of trust because it never acquires a true beneficial interest; and

16 (2) the MERS system is a means of circumventing the public recording requirements.

17   In support of its first objection, Plaintiffs allege that MERS never owns or acquires

18 any beneficial interest in any of the loans it is named as the beneficiary under a deed of trust.

19 As such, Plaintiffs allege that the MERS system is a "sham" beneficiary. Plaintiffs, however,

20 have not directed this Court to any Arizona case that finds that the MERS system is

21 fraudulent. Indeed, Plaintiffs' allegations would foreclose the very splitting of a promissory

22 note from a deed of trust. Such an approach, of course, would intrude into the realm of third-

23 party beneficiary contracts, as well as assignments and delegations. More importantly,

24 Plaintiffs have failed to allege what effect, if any, listing the MERS system as a "sham"

25 beneficiary on the deed of trust had upon their obligations as borrowers. The members of

26 the MERS system were not participants in Plaintiffs' loan origination process, nor do

27 Plaintiffs so allege. Plaintiffs do not allege that they were somehow induced to enter into

28 their loans on the basis that MERS was a genuine and not a "sham" beneficiary.

1    Moreover, the Court fails to see how the MERS system commits a fraud upon
2    Plaintiffs.  Plaintiffs' argument that MERS is a "sham" beneficiary is unconvincing.
3    Otherwise, any situation where a beneficiary obtains less than the full rights possessed by the
4    entity or person granting the beneficiary status would likewise result in a "sham" beneficiary.
5    The fact that MERS does not obtain such rights as to collect mortgage payments or obtain
6    legal title to the property in the even of non-payment does not transform MERS' status into
7    a "sham."

8    Plaintiffs second objection to the MERS system similarly has no effect upon their
9    status as borrowers.  The original mortgage between the borrower and the lender, which lists
10    MERS as the beneficiary, is recorded in the public land records.  Subsequent sales of the
11    mortgage, so long as they involve MERS members, are not recorded in the public records
12    but, rather, are tracked in the MERS system.  Thus, Plaintiffs really attack the notice, or lack
13    thereof, to future buyers of mortgages in the MERS system.  Any lack of notice in the public
14    records, however, to future buyers of Plaintiffs' mortgages does not alter Plaintiffs'
15    obligations under the mortgages; nor have Plaintiffs alleged that, had they been fully apprised
16    of the MERS system and its use of an in-house records keeping system, Plaintiffs would not
17    have entered into their loans.  Plaintiffs also do not allege that they were somehow induced
18    into entering into their loans based upon a misunderstanding of the MERS system.

19    For these reasons, the Court finds that Plaintiffs' claim for conspiracy to commit fraud
20    fails as a matter of law under Rule 12(b)(6).  In Arizona, a fraud claim requires proof of nine
21    elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
22    of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the
23    recipient in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of
24    the representation; (7) the hearer's reliance on the truth of the representation; (8) the right to
25    rely on it; and (9) consequent and proximate injury.  *Echols v. Beauty Built Homes, Inc.,* 647
26    P.2d 629, 631 (1982).  The Court finds that elements two, three, seven, and nine are all
27    absent from Plaintiffs' complaint.  For the reasons articulated above, the Court finds that
28    Defendants representations to Plaintiffs that MERS would serve as the beneficiary under the

- 16 -

1  deed of trust was not a false representation and, even if such a representation was false, the

2  Court finds that it was not material. Furthermore, Plaintiffs have failed to adequately allege

3  that Defendants' representations concerning the MERS system–including serving as the

4  beneficiary under the deeds of trust–induced them to rely upon such representations and, in

5  so doing, Plaintiffs have suffered injuries that resulted from the false representations. At

6  most, Plaintiffs find the MERS system to be disagreeable and inconvenient to them as

7  consumers. Such complaints, however, do not arise to the level of fraud, much less a

8  conspiracy to commit fraud.

9  ### Count VIII

10  In their eighth claim for relief, Plaintiffs seek damages for Defendants' intentional

11  infliction of emotional distress. To prove a claim of intentional infliction of emotional

12  distress under Arizona law, Plaintiffs must show that: 1) Defendants engaged in extreme and

13  outrageous conduct; 2) Defendants either intended to cause emotional distress or recklessly

14  disregarded the near certainty that emotional distress would result from the conduct; and 3)

15  Plaintiffs actually suffered emotional distress because of Defendants' conduct. *Watts v.*

16  *Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980). "To establish a claim under

17  this tort, the conduct alleged must be 'atrocious' and 'beyond all possible bounds of decency'

18  so that an average member of the community would regard it as outrageous. *Lucchesi v.*

19  *Stimmell*, 716 P.2d 1013, 1015 (Ariz. 1986). "It is for the court to determine, in the first

20  instance, whether the defendant's conduct may reasonably be regarded as so extreme and

21  outrageous as to permit recovery, or whether it is necessarily so." *Id.* at 1016 (quoting

22  RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

23  Plaintiffs' allegations that Defendants targeted Plaintiffs because of their vulnerability

24  to Defendants' alleged predatory lending practices, even if true, do not arise to the level of

25  "atrocious," and do not go "beyond all possible bounds of decency." Further, it is not

26  enough that Defendants acted with an intent that is tortious or even criminal. RESTATEMENT

27  (SECOND) OF TORTS § 46 cmt. d. Plaintiffs' allegations fail to state a claim for relief under

28  Arizona law for intentional infliction of emotional distress, as the alleged conduct is not the

- 17 -

1   type of conduct that "falls at the very extreme edge of the spectrum of possible conduct."

2   *Watts*, 619 P.2d at 1035.

3 *Counts IX & X*

4      In their ninth and tenth claims for relief, Plaintiffs seek injunctive and declaratory

5   relief, respectively. However, for the various reasons discussed above, the Court has already

6   found that Plaintiffs' claims contained in Counts I-VIII must be dismissed. Therefore, any

7   request for injunctive and declaratory relief premised upon Counts I-VIII must likewise fail.

8 *A.R.S. § 33-807*

9      In addition to the arguments raised by the other Defendants, which are addressed

10   above, Defendant Tiffany & Bosco, P.A. argues that Arizona Revised Statutes section 33-

11   807(E) (2007) precludes the filing of such actions against T&B as trustee. In response,

12   Plaintiffs argue that T&B were not properly appointed as trustee and T&B failed to act in

13   good faith. Section 33-807(E) provides:

14        *The trustee need only be joined as a party in legal actions pertaining*
*to a breach of the trustee's obligation under this chapter or under the deed of*
15        *trust.* Any order of the court entered against the beneficiary is binding upon
the trustee with respect to any actions that the trustee is authorized to take by
16        the trust deed or by this chapter. *If the trustee is joined as a party in any other*
*action, the trustee is entitled to be immediately dismissed* and to recover costs
17        and reasonable attorney fees from the person joining the trustee.

18   (Emphasis added.)

19      T&B was substituted as trustee on the Almandarez and Maximo deeds of trust.[6] The

20   Court disagrees that T&B was not properly appointed as trustee. Plaintiffs do not argue that,

21   procedurally, T&B was improperly added as substitute trustee, nor that, but for being

22   appointed by MERS, T&B is not otherwise permitted under Arizona law to act in the

23   capacity as a trustee. Rather, Plaintiffs' contention is that MERS has no authority to appoint

24   a trustee and, thus, T&B's appointment is a nullity. However, as discussed above, the Court

25

26

---

27      [6] T&B argues that only Michael A. Bosco, Jr., was appointed as the substitute trustee
and not T&B. However, the Court need not resolve this dispute as the Court finds that T&B
28   was improperly named in this suit under A.R.S. § 33-807(E).

- 18 -

1    rejects Plaintiffs' argument that the MERS system is a fraud and is without authority to act
2    as a beneficiary under a deed of trust.

3        Likewise, the Court rejects Plaintiffs' argument that T&B did not act in good faith.
4    Plaintiffs' argument is merely a corollary of its argument that T&B was not duly appointed.
5    That is, Plaintiffs argue that because T&B was added as trustee by MERS–who has no
6    authority to appoint a trustee–T&B's actions as trustee–including foreclosure actions–were
7    not conducted in good faith since T&B failed to adequately investigate whether they were
8    lawfully appointed as trustee. However, because the Court rejects Plaintiffs' arguments
9    related to the MERS system, the Court finds that Plaintiffs' complaint fails to state a claim
10    that T&B did not act in good faith.

11        T&B has requested its attorneys' fees and court costs for having to defend against
12    Plaintiffs' action. Section 33-807(E) provides that "If the trustee is joined as a party in any
13    other action, the trustee *is entitled* to be immediately dismissed *and to recover costs and*
14    *reasonable attorney fees from the person joining the trustee.*" (Emphasis added.) T&B may
15    file a motion for attorneys fees and costs in accordance with LRCiv. 54.2.

16                          *Motion To Amend*

17        Plaintiffs also seek leave of this Court to file a second amended complaint. Leave to
18    amend a complaint is within the Court's sound discretion, and in exercising this discretion,
19    the Court must be guided by the command of Rule 15(a), which provides that "leave shall
20    be freely given when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373
21    (9th Cir. 1990) (citing Fed.R.Civ.P. 15(a)). The Court should consider five factors when
22    assessing whether to allow leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to
23    the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously
24    amended the complaint. *Id.* When dismissing for failure to state a claim, the Court should
25    grant leave to amend unless the Court determines that the pleading could not possibly be
26    cured by the allegations of other facts. *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.
27    1995); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by
28    itself, justify the denial of a motion for leave to amend.").

- 19 -

1    Plaintiffs attached their proposed second amended complaint as an exhibit to their
2    motion to amend. The Court finds that Plaintiffs' request for a second amendment to their
3    complaint was not done in bad faith, nor has it resulted from undue delay. Given that there
4    have been several motions to dismiss filed on the basis of Plaintiffs' first amended complaint,
5    the Court does find that there would be some level of prejudice to Defendants, albeit small.
6    The Court also notes that Plaintiffs have already amended their complaint and are seeking
7    leave to do so a second time. However, after reviewing Plaintiffs' second amended
8    complaint, the Court finds that factor four—futility—weighs heavily against granting Plaintiffs'
9    request for leave to amend. None of Plaintiffs' proposed changes in their second amended
10   complaint rescue Plaintiffs' claims that are time-barred as discussed above. The thrust of
11   Plaintiffs' changes occur in Count VII (or renumbered as Count VI in Plaintiffs' proposed
12   second amended complaint). While Plaintiffs' proposed changes in Count VII do add details
13   about the MERS system, they do not cure the deficiencies discussed above.

14       Therefore, because the Court finds that Plaintiffs' request for a second amended
15   complaint would prove futile, the Court denies the motion.

16                                    **CONCLUSION**

17       Accordingly,

18       **IT IS ORDERED** that: Defendant Tiffany & Bosco, P.A.'s Motion to Dismiss is
19   granted (Doc. # 44); Defendant GMAC Mortgage, L.L.C.'s Motion to Dismiss Plaintiffs'
20   First Amended Complaint (Doc. # 118) is granted; Defendants MERS and MERSCORP,
21   Inc.'s Motion to Dismiss (Doc. # 122) is granted; Defendants Freddie mac and Fannie Mae's
22   Motion to Dismiss (Doc. # 123) is granted; Defendant United Guaranty Corporation's
23   Motion to Dismiss (Doc. # 124) is granted; Defendants National City Corporation and PNC
24   Financial Services Group, Inc.'s Motion to Dismiss (Doc. # 126) is granted; Defendant GE
25   Money Bank's Motion to Dismiss (Doc. # 127) is granted; Defendants National City Bank
26   and National City Mortgage's Motion to Dismiss (Doc. # 128) is granted; Defendants
27   Countrywide and First Franklin's Motion to Dismiss (Doc. # 133) is granted; Defendant
28   Wells Fargo's Motion to Dismiss (Doc. # 137) is granted; Defendant HSBC Mortgage

1   Corporations, U.S.A.'s Motion to Dismiss (Doc. # 139) is granted; Defendant JPMorgan

2   Chase Bank, N.A.'s Motion to Dismiss (Doc. # 147) is granted.

3        **IT IS FURTHER ORDERED** that Defendants Countrywide Home Loans, Inc., Bank

4   of America, N.A., Merrill Lynch & Company, Inc., First Franklin Financial Corporation, and

5   LaSalle Bank, N.A.'s Motion for Leave to File Sur-Reply (Doc. # 166) is denied as moot.

6        **IT IS FURTHER ORDERED** that Plaintiffs Olga Cervantes, Carlos Almendarez,

7   and Arturo Maximo's Motion to Amend Complaint (Doc. # 189) is denied.

8        **IT IS FURTHER ORDERED** that Defendants' Motion to Transfer and Consolidate

9   (Doc. # 194) is denied as moot.

10       **IT IS FURTHER ORDERED** that Defendant Tiffany & Bosco, P.A.'s request for

11  attorneys' fees is denied without prejudice, with leave to re-file pursuant to LRCiv 54.2.

12       **IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment

13  accordingly.

14       DATED this 23rd day of September, 2009.

15

16

17

18                                James A. Teilborg
                                  United States District Judge

19

20

21

22

23

24

25

26

27

28

- 21 -